# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

ADRIENNE HILLMAN,

    Plaintiff,

v.

FLORIDA COUNCIL AGAINST
SEXUAL VIOLENCE, INC.,

    Defendant.

CIVIL ACTION NO.

## DEFENDANT'S NOTICE OF REMOVAL

Defendant, FLORIDA COUNCIL AGAINST SEXUAL VIOLENCE, INC. ("FCASV" or "Defendant"), by and through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, respectfully files this Notice of Removal giving notice it is removing this civil action to the United States District Court for the Northern District of Florida, Tallahassee, Division. In support of this Notice of Removal, Defendant states as follows:

### I.   PROCEDURAL HISTORY

1. On or about July 18, 2022, Plaintiff Adrienne Hillman ("Plaintiff"), filed a Complaint in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, entitled *Adrienne Hillman v. Florida Council Against Sexual Violence, Inc.*, designated Case No. 2022-CA-001251 (the "State Court

Action"), wherein she alleges she was discriminated against on the basis of her race and retaliated against while working at FCASV. *See generally* Plaintiff's Complaint ("Compl.") She also claims she was forced to resign as a result of Defendant's conduct. Compl. ¶ 6.

2. A copy of the Summons and Complaint as well as true and legible copies of all other papers on file in the State Court Action are attached hereto as **Exhibit "A."** Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as the Summons and Complaint have not yet been served. The judge presiding over the State Court Action has not entered any orders, and there are no pending motions.

3. The District and Division embracing the place where the State Court Action is pending is the United States District Court for the Northern District of Florida, Tallahassee Division. *See* 28 U.S.C. §§ 89(b), 1441(a).

4. This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, because it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

II. **DIVERSITY OF CITIZENSHIP**

5. To qualify for diversity jurisdiction, there must be complete diversity between the parties, which means no plaintiff may be a citizen of the same state as

the defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (citations omitted).

6. In the Complaint, Plaintiff indicates she resides in Florida. Compl. ¶ 2. However, subsequent to Plaintiff's resignation, Plaintiff relocated to Texas. Plaintiff obtained a Texas driver's license, registered to vote in Texas, obtained employment in Texas, registered multiple vehicles in Texas, and updated social media to reflect that she lived in Texas. Plaintiff lived in Texas for over 3 years.

7. Subsequent to her move to Texas, Plaintiff relocated to California. Plaintiff updated her social media to reflect that she lived in California, obtained a P.O. Box in California, and obtained employment in California. Accordingly, Plaintiff is a citizen of California for purposes of diversity. Alternatively, Plaintiff is a citizen of Texas. Regardless, as is relevant to this removal, Plaintiff is not a citizen of the State of Florida for purposes of 28 U.S.C. § 1332, and has not been a Florida citizen since at least 2019.

8. As a corporation, Defendant is deemed to be a citizen of both the state in which it was incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). Defendant is incorporated under the laws of the State of Florida, and, therefore, is a citizen of Florida for purposes of diversity.

9. To determine a corporation's "principal place of business," the Supreme Court has held courts should apply the "nerve center" test. *Hertz Corp. v.*

*Friend*, 559 U.S. 77, 92-93 (2010).  Under that test, a corporation's principal place of business is the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *Id*. A corporation's principal place of business normally is the state in which it maintains its main headquarters. *Id.*

10. Defendant's officers direct, control, and coordinate the corporation's activities at its corporate headquarters in Tallahassee, FL. Thus, Defendant has its principal place of business in Florida, and, accordingly, it is a citizen of Florida for purposes of diversity.

11. In summary, complete diversity exists in this case because Plaintiff is a citizen of California and Defendant is a citizen of Florida. Accordingly, for the purposes of 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists between Plaintiff (a citizen of California) and Defendant (a citizen of Florida) at the time of filing this Notice of Removal.

### III.   AMOUNT IN CONTROVERSY

12. Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction also requires the amount in controversy to "exceed the sum or value of $75,000, exclusive of interest and costs."

13. Plaintiff's Complaint alleges damages exceeding $30,000.00.  Compl. ¶ 1. Additionally, Plaintiff's civil cover sheet reflects that Plaintiff's assessment of the Complaint is in excess of $100,000.00. *See* **Exhibit A**, p. 4.

14. Where, as here, the initial pleading does not demand a specific sum, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). The Supreme Court has held a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not submit evidence in support thereof. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

15. In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," regardless of the plaintiff's likelihood of success. *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010); *Jackson v. Am. Bankers Ins. Co.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (finding the "appropriate measure is the litigation value of the case assuming the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint").

16. "[The] Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010)

(internal quotation marks omitted). Thus, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. *Id*. at 1062.

17. Courts may also consider jury verdicts rendered in matters raising similar claims and injuries. *See, e.g., Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1314 (M.D. Fla. 2016) (reviewing evidence of settlements and jury verdicts together with the allegations of plaintiff's complaint to conclude "it [was] more likely than not that the amount in controversy exceeds $75,000."); *Gardner v. Mgmt. & Training Corp.*, 2014 WL 3039335, at *2 (N.D. Fla. July 3, 2014) (considering proffered jury verdict research in determining whether the amount in controversy exceeds $75,000); *Alshakanbeh v. Food Lion, LLC*, 2007 U.S. Dist. LEXIS 20746, at *4-7 (M.D. Fla. Mar. 23, 2007) (considering information from defendant based upon defendant's review of published jury verdicts and damages awards involving claims similar to plaintiff's in determining the requisite $75,000 minimum had been established); *see also Schmidt v. Pantry, Inc.*, 2012 WL 1313490, at *3-4 (N.D. Fla. Mar. 6, 2012) (considering jury verdicts from other Florida courts when determining emotional distress damages in an employment discrimination case exceeded the amount in controversy requirement). Importantly, "[a] removing defendant is *not* required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Payne*, 154 F. Supp. 3d at 1313

6

(internal quotation marks omitted; emphasis added) (citing *Pretka*, 608 F.3d at 754).

18. A plain reading of Plaintiff's Complaint – together with the jurisdictional allegations herein – demonstrates the amount in controversy exceeds the sum of $75,000.00, and thus, meets the jurisdictional amount required for removal based on diversity. *See* 28 U.S.C. § 1332(a). In summary, Plaintiff alleges Defendant discriminated against her based on her race, retaliated against her, and ultimately forced her to resign her employment. Based on those alleged facts, Plaintiff is seeking punitive and compensatory damages for "emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits"

19. Compensatory damages, lost wages, punitive damages, and attorneys' fees are all recoverable pursuant to FCRA, § 760.11(5).

20. As to lost wages, back pay should be calculated from the time of the adverse employment action through the date of trial. *E.g., Pope v. 20/20 Commc'ns, Inc.*, No. 8:15-cv-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial); *Hendry v. Tampa Ship, LLC*, No. 8:10-cv-1849-T-30-30TGW, 2011 WL 398042,

\*2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Morgan v. Sears, Roebuck & Co.*, No. 12-60055-CIV, 2012 WL 2523692, at \*2 (S.D. Fla. June 29, 2012) (calculating back pack from time of termination through expected trial date, noting the court may use its "judicial experience and common sense" in making that determination); *see Penalver v. N. Elec., Inc.*, No. 12-80188-CIV, 2012 WL 1317621, at \*2 (S.D. Fla. Apr. 17, 2012) (calculating back pay through the "first possible trial date" approximately ten months after removal); *Messina v. Chanel, Inc.*, No. 10-24518-CIV, 2011 WL 2610521, at \*2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future). Indeed, the Eleventh Circuit has approved calculating back pay through the estimated time of trial for purposes of the amount in controversy. *See Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 WL 225760, at \*3 (M.D. Fla. Jan. 16, 2015) (calculating back pay from termination through estimated trial date of twenty-four months after complaint was filed, along with front pay of one year), *aff'd by Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. Appx. 914, 917 (11th Cir. 2016) (approving same).

21. At the time of her resignation on or about July 19, 2018, (Compl., ¶ 6), Plaintiff was earning a salary of $48,000.00 per year. As of the date of this removal, it has been approximately 4 years since Plaintiff's employment ended.

Accordingly, Plaintiff's back pay to date is approximately $192,000. Adding an additional year of back pay to account for the expected time between now and trial Plaintiff could recover approximately $240,000.00 in total back pay. Thus, the potential for back pay alone easily satisfies the jurisdictional threshold three times over.

22.  Front pay further augments the amount of lost wages in this action. *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 WL 1126670, at *4-5 (M.D. Fla. May 11, 2005) (crediting back pay from the time of plaintiff's termination through the estimated time of trial, and crediting one year of front pay as a conservative measure of potential future lost wages). Here, one year of front pay would add another $48,000.00 to the amount in controversy.

23.  Additionally, district courts routinely include compensatory damages in the form of pain and suffering, such as Plaintiff claims in this case, in the jurisdictional amount as well. *See Estevez-Gonzalez v. Kraft, Inc.*, 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. Sept. 24, 2007) (finding the complaint "clearly established" amount in controversy based, in part, on general allegations of pain,

mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.). *Wineberger*, 2015 WL 225760 at *4, *aff'd by Wineberger*, 672 F. Appx. at 917 (including emotional distress damages in the range of $5,000-$30,000 under the FCRA for purposes of calculating the amount in controversy, when the complaint merely alleged emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons.") Additionally, the Eleventh Circuit has held objective medical testimony is not necessary to support an award of emotional distress damages under FCRA, and plaintiff's lay testimony concerning the emotional impact of illegal termination was itself sufficient to support such award. *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000) (affirming jury award of $150,000 for emotional distress caused by illegal termination under FCRA). Thus, to the extent Plaintiff purports to seek emotional distress damages, including for her alleged PTSD, $10,000 for emotional pain and suffering is a very conservative estimate to include in the amount in controversy calculation. This does not include potential recovery for punitive damages, which further increases the amount in controversy for the purposes of diversity jurisdiction. *See Wineberger*, 2015 WL 225760 at *4 (considering punitive damages under the FCRA in determining amount in controversy).

24. Adding Plaintiff's claim for attorneys' fees, which are recoverable under the FCRA, to the amount in controversy calculation, there is no question the amount in controversy significantly exceeds $75,000.00. *See Penalver*, 2012 WL 1317621 at *3 (including reasonable attorney's fees in amount of controversy calculation).

25. Because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different states, the District Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). Thus, this case may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446.

## IV.     **NOTICE AND TIMELINESS**

26. Finally, this Notice of Removal has been given to Plaintiff and has been promptly filed with the Clerk of the Circuit Court of the Second Judicial Circuit in and for Leon County. A copy of the Notice of Filing Notice of Removal (without exhibits) is attached hereto as **Exhibit "B."**

27. The required filing fee and an executed civil cover sheet accompany this Notice.

WHEREFORE, Defendant respectfully removes this action, pending in the Second Judicial Circuit Court of Leon County, Florida to the United States District Court in the Northern District Court of Florida, Tallahassee Division.

Dated this 15th day of August, 2022.          Respectfully submitted,

                                             */s/ West A. Holden*
Nancy A. Johnson
Florida Bar # 597562
najohnson@littler.com
West Holden
Florida Bar #113569
wholden@littler.com

LITTLER MENDELSON P.C.
111 North Orange Avenue
Suite 1750
Orlando, FL  32801.2366
Telephone: 407.393.2900
Facsimile:  407.386.9081

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel of record.

                                                     */s/ West A. Holden*
                                                   West A. Holden